## Richmond

### Nelson Jackson Morris

### V.

### Commonwealth of Virginia

Record No. 831438.

October 12, 1984.

Present: All the Justices.

*John C. Lowe (J. Lloyd Snook; Lowe & Jacobs, P.C.; Paxson, Smith, Gilliam & Scott, P.C.,* on brief), for appellant.
*Richard B. Smith, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

On August 20, 1982, the defendant, Nelson Jackson Morris, was riding in the back seat of an automobile when he pulled a pistol from a holster and shot the vehicle's operator, Lucille Collier Conley, in the back of the head. Seconds later, he shot a front-seat passenger, Charlene Christine Paugh Morris, in the back of her head. Another passenger steered the vehicle into an embankment on the side of the road. Lucille Conley and Charlene Morris died almost immediately from their gunshot wounds.

On September 20, 1982, the defendant was charged with capital murder in a single-count indictment alleging that he "did . . . unlawfully and feloniously kill and murder more than one person, to-wit: Lucile Collier Conley and Charlene Christine Paugh Morris, such killings being part of the same act or transaction, and being willful, deliberate and premeditated killings, a Class 1 Felony, in violation of § 18.2-31 of the Code of Virginia."[1] In two other indictments, the defendant was also charged with using a firearm in the commission of each murder.

In the guilt phase of a bifurcated jury trial conducted pursuant to Code §§ 19.2-264.3 and -264.4, the jury returned a verdict finding the defendant "guilty of capital murder." At the same time, the jury convicted the defendant on both firearms charges and fixed his punishment at two years' imprisonment on the charge involving a firearm in the murder of Lucille Conley and four years' imprisonment on the charge involving a firearm in the killing of Charlene Morris.

In the penalty stage of the capital murder case, the jury fixed the defendant's punishment at "imprisonment for life for each . . . offense." After receipt of a probation officer's report, the trial court imposed upon the defendant one life sentence for the murder of Lucille Conley and a second life sentence for the murder of Charlene Morris. The court also imposed the two- and four-year sentences fixed by the jury for the two firearms convictions.

---

[1] Code § 18.2-31 provides in pertinent part:

The following offenses shall constitute capital murder, punishable as a Class 1 felony:

. . . .

(g) The willful, deliberate and premeditated killing of more than one person as a part of the same act or transaction.

A Class 1 felony is punishable by death or imprisonment for life. Code § 18.2-10(a).

On appeal, the defendant attacks his second life sentence for capital murder and his second conviction and sentence for the use of a firearm. With respect to the capital murder sentence, the defendant's assignment of error states that "[t]he trial court erred in permitting [the defendant] to be sentenced to two life terms in the penitentiary as punishment for conviction on one indictment of capital murder." Hence, we are limited to this question, as stated in the defendant's brief: "When a defendant is charged under only one indictment for capital murder in violation of *Va. Code Ann.* § 18.2-31(g), can he be sentenced to two life sentences on that one indictment?"[2]

The answer to this question does not turn upon whether the indictment in this case charges one offense or two; in either event, the result is the same. If only one offense is charged, the indictment can support only one conviction and sentence; but even if two offenses are charged, because they are contained in a single count, only one conviction and one sentence are permissible.[3]

We reach this conclusion as a result of the logical extension of a rule long applicable in an analogous situation, *viz.*, where a single-count indictment charges both housebreaking and grand larceny as part of the same act or transaction:

---

[2] The Attorney General takes the position that the defendant did not preserve the question quoted in the text. The Attorney General says the defendant agreed to, and thus is bound by, an instruction which told the jury, *inter alia*, that it could convict the defendant on two counts of first degree murder and fix punishment on each count at life imprisonment. This instruction, however, was given the jury at the guilt stage of the trial, and the part cited by the Attorney General was predicated upon the jury's first finding the defendant not guilty of capital murder, an eventuality which, of course, did not occur. Hence, the part of the instruction cited by the Attorney General never became operative and could not bind the defendant at the penalty stage of the trial, or on appeal. At the penalty stage, while the trial court was considering an instruction and a verdict form permitting the jury to fix punishment at life imprisonment for "each act of first degree murder" or "each such offense," defense counsel objected, stating: "[T]he Jury's alternative should be one (1) life imprisonment and not two (2). . . ." [T]his is a single indictment on capital murder, and only a single life sentence can be imposed." This was sufficient to preserve the precise question quoted in the text.

[3] We do not decide in this case whether it would be permissible under Code § 18.2-31(g) to charge in separate indictments or in separate counts of the same indictment each of the multiple murders involved and to convict and sentence separately on each charge or count. Because the indictment involved here clearly permits only one conviction and one sentence, we reserve decision on the question whether different indictments would produce different results.

[U]nder the decisions of this court, while two separate and distinct charges, one of housebreaking with intent to commit larceny, and the other of grand larceny, may be made in a single count, an accused may be found guilty of either of the offenses but there can be only one penalty imposed.

*Robinson* v. *Commonwealth*, 190 Va. 134, 138-39, 56 S.E.2d 367, 369 (1949). *See also Jones* v. *Commonwealth*, 208 Va. 370, 375, 157 S.E.2d 907, 911 (1967); *Clark* v. *Commonwealth*, 135 Va. 490, 496, 115 S.E. 704, 706 (1923).

It is permissible to include both housebreaking and grand larceny in a single-count housebreaking indictment "because the charge of larceny in such case [is] the best evidence of the intent with which the breaking was committed." *Clark*, 135 Va. at 496, 115 S.E. at 706. Similarly, it is permissible, and, indeed, essential to allege more than one killing in a single-count indictment under Code § 18.2-31(g) to supply the numerical ingredient necessary to charge capital murder. It does not follow, however, that such an indictment will support multiple convictions or sentences.

We hold, therefore, that the trial court erred in permitting the jury to fix the defendant's punishment for capital murder at two life sentences. Accordingly, the life sentence imposed upon the defendant for the murder of Charlene Morris, the second of the two life sentences imposed, must be vacated. The life sentence imposed for the murder of Lucille Conley will remain undisturbed.

We take a different view with respect to the defendant's conviction and sentence for the use of a firearm in the murder of Charlene Morris. Code § 18.2-53.1, insofar as is pertinent here, establishes the firearms offense and prescribes the penalty:

It shall be unlawful for any person to use or attempt to use any pistol . . . while committing or attempting to commit murder. . . . Violation of this section shall constitute a separate and distinct felony and any person found guilty thereof shall be sentenced to a term of imprisonment of two years for a first conviction, and for a term of four years for a second or subsequent conviction under the provisions of this section.

The defendant argues that because he was convicted of only one charge of capital murder, he should have been convicted and sentenced only once for the use of a firearm. This result is dictated,

the defendant says, by our recent decision in *Flythe* v. *Commonwealth*, 221 Va. 832, 275 S.E.2d 582 (1981).

The accused in *Flythe* fired one shot at two people. He was indicted and convicted separately on each of two charges of attempted murder and two charges of the use of a firearm in the commission of attempted murder. On one of the firearms charges, he received a three-year sentence for a second or subsequent conviction under Code § 18.2-53.1.[4] He contended that the second conviction and sentence were improper because his use of a firearm "constituted only one offense and that therefore neither of the [firearms] convictions qualified as a 'second or subsequent conviction' under Va. Code § 18.2-53.1." 221 Va. at 833, 275 S.E.2d at 583. He also contended that his case did not involve "a series of serious felonies committed over a period of time but [was] one incident, involving one act and two different individuals." *Id.* at 834, 275 S.E.2d at 583. We rejected the contentions and affirmed, stating:

> The statute addresses itself not to the act or the incident, but to the offenses committed with a firearm and the convictions that result therefrom.
>
> The enhanced punishment provided by the statute is not geared to whether an accused has committed one or more acts. *Instead, it is geared to the number of actual convictions suffered by an accused.* Where several convictions result from the same act, each conviction is separate and distinct from the other. It is the identity of the offense and not of the act which is dispositive. We have held that if two or more persons are injured by a single criminal act, this results in a corresponding number of distinct offenses.

*Id.* at 835, 275 S.E.2d at 584 (emphasis added) (citations omitted).

Citing the language italicized above, the defendant argues that "there should be a one-to-one relationship between the underlying felonies and the convictions for use of a firearm in the commission of those felonies." Hence, the defendant concludes, because he was convicted of only one underlying felony, he should not have been convicted of more than one firearms charge.

---

[4] At the time of the conviction in *Flythe*, Code § 18.2-53.1 prescribed a three-year sentence for a second or subsequent offense.

We disagree with the defendant; he reads *Flythe* too narrowly. The decision does not require a one-to-one relationship between underlying felonies and firearms convictions. It so happened that there were two convictions of underlying felonies in *Flythe* from which we could demonstrate the correctness of the two firearms convictions. But, as we stated in the quotation above, it is the identity of offenses which is dispositive, and, if a single act results in injury to two or more persons, a corresponding number of distinct offenses may result.

From the defendant's capital murder conviction here, we can identify two separate firearms offenses just as clearly as we could in *Flythe*. Code § 18.2-31(g) uniquely requires proof of the killing of two or more persons as an absolute predicate for a conviction of capital murder. Hence, the defendant's conviction under Code § 18.2-31(g) establishes conclusively that he killed two persons and, since the evidence shows he shot both his victims, that he committed a corresponding number of distinct firearms offenses in the commission of those killings. Accordingly, we hold that the defendant's conviction of the use of a firearm in the murder of Charlene Morris constituted a second or subsequent conviction under Code § 18.2-53.1.

As indicated previously, we will reverse the judgment appealed from to the extent it sentenced the defendant to imprisonment for life for the murder of Charlene Morris, and we will vacate that sentence. In all other respects, the judgment will be affirmed.

*Reversed in part;*
*affirmed in part.*